GARY M. RESTAINO
United States Attorney
District of Arizona
CARIN C. DURYEE
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: carin.duryee@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 22-00984-TUC-RM |
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| Jordan Thomas Udall, | |
| Defendant. | |

Now comes the United States, by and through its undersigned attorneys, and submits the following sentencing memorandum for the sentencing scheduled on November 30, 2022:

I. **GOVERNMENT'S CONCURRENCE WITH PSR CALCULATIONS**

The government agrees with the calculations as stated in the Presentence Investigation Report (PSR), dated November 23, 2022, the Probation Officer's responses to defendant's objections, and with the sentencing recommendation within the PSR. For the reasons contained in the PSR, this sentencing memorandum, and matters to be discussed more fully at sentencing in this matter, the United States asks the Court to sentence the defendant to a sentence within the terms of the plea agreement which reflects the seriousness of the offense, followed by lifetime supervised release.

## II. DEFENDANT'S OBJECTIONS TO THE PSR AND GUIDELINES

Defendant's objections to enhancements applied in the PSR and general arguments against the applicable guidelines in this matter are based on the facts that the majority of cases involving child exploitation material result in the application of certain enhancements pursuant to USSG §2G2.2(b)(6). However, the argument that child pornography is now acquired, used, and shared by computer in the vast majority of cases, and that technology has made acquisition of large numbers of such images easy, does not diminish the seriousness of the offenses. In addition, the criticism of the applicable guidelines on those grounds is a somewhat common but now stale argument that has been repeatedly considered and rejected by both the Sentencing Commission and the Ninth Circuit. *United States v. Kiefer*, 760 F.3d 926 (9th. Cir. 2014)(computer enhancement not impermissible double-counting and was intended by Sentencing Commission.)

## III. SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(a)

As the defendant recognizes within his sentencing memorandum, although the U.S. Sentencing Guidelines are advisory, and the Court has discretion in fashioning an appropriate sentence, the Court still begins its analysis by properly calculating the applicable range Defendant faces under § 2G2.2. *See United States v. Booker*, 543 U.S. 220, 245 (2005). The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice" and reflect "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. As the Ninth Circuit pointed out in *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011), sentencing courts "must continue to consider the applicable (child pornography) Guidelines range as 'the starting point and the initial benchmark.'" *Id*. at 5614-15

(quoting *Gall*, 552 U.S. at 49). Moreover, while the Ninth Circuit in *Henderson* held that a court's disagreement with the guidelines for policy reasons may be used as a reason to give a below-guidelines sentence, the Court also emphasized that a district court may "disregard the Guidelines only where it is 'reasonable' for a court to do so." *Id.*, at 5624 (Justice Callahan concurring, citing *U.S. v. Pepper*, 131 S.Ct 1229, 1252 (2011)). Thus, in child pornography cases, a significant number of courts from across the country, including the Ninth Circuit, have consistently upheld guideline sentences for child pornography cases as reasonable. *See, e.g., United States v. Carlson*, 395 Fed.Appx. 413 (9th Cir. 2010) (unpublished) (98 month sentence reasonable); *United States v. Blinkinsop*, 606 F.3d 1110 (2010) (within-guidelines sentence of 97 months affirmed, with recognition that "when a district judge imposes a sentence within the Guidelines range, it is probable that the sentence is reasonable" and that a "sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.") [1]

---

[1] *See also*, *United States v. Sanders*, 2014 WL 768449 (9th Cir. Feb. 27, 2014) (unpubl); *United States v. Rice*, 540 F. App'x 782 (9th Cir. 2013); *United States v. Mills*, 518 F. App'x 540 (9th Cir. 2013); *United States v. Maggio*, 499 F. App'x 696 (9th Cir. 2012); *United States v. Frantz*, 485 F. App'x 890 (9th Cir. 2012); *United States v. Grigsby*, 469 F. App'x 589 (9th Cir. 2012); *United States v. Shigley*, 451 F. App'x 705 (9th Cir. 2011); *United States v. Maier*, 639 F.3d 927 (9th Cir. 2011); *United States v. Aguirre*, 448 F. App'x 670 (9th Cir. 2011); *United States v. Alfaro*, 446 F. App'x 840 (9th Cir. 2011); *United States v. Psick*, 434 F. Appx 646 (9th Cir. 2011); *United States v. Aglony*, 421 F. App'x 756 (9th Cir. 2011); *United States v. Anthony*, 421 F. App'x 674 (9th Cir. 2011); *United States v. Richards*, 414 F. App'x 911 (9th Cir. 2011);*U.S. v. Reilly*, 662 F.3d 754 (6th Cir. 2011)(151 month guideline sentence reasonable for distribution of child pornography); *United States v. Davis*, 402 Fed.Appx 607 (2nd Cir., 2010) (unpublished)(guideline sentence reasonable despite defendant's age and health issues); *United States v. Scalise*, 398 Fed. Appx. 736 (3rd Cir. 2010)(guideline sentence upheld); *United States v. Stabile,* 633 F.3d 219 (3rd Cir. 2011); *United States v. Moore*, 373 Fed.Appx. 168 (3rd Cir. 2010) (unpublished) (120 months reasonable); *United States v. McMickens*, 373 Fed.Appx. 226 (3rd Cir. 2010) (unpublished)(109 months for receipt reasonable); *United States v. Garcia*, 402 Fed.Appx. 768 (4th Cir., 2010) (unpublished)(guideline sentence reasonable); *United States v. McKee*, 2010 WL 1664081 (D.Md. April 21, 2010) (unpublished); *United States v. Warner*, 399 Fed.Appx. 88 (6th Cir. 2010) (unpublished)(guideline sentence upheld); *United States v. McNerney*, 636 F.3d 722 (6th Cir. 2011); *United States v. Brown*, 634 F.3d 954(7th Cir. 2011)(240

In this matter, the government stands by its plea agreement which provides for a below-guideline sentence that it submits still meets the factors set forth in Section 3553.

### A. The Harm of Child Pornography

In terms of the harm done to the children depicted in child pornography images, the Ninth Circuit has determined that there is no difference between the production of child pornography and other child pornography crimes that cause the distribution of the images, as the "distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children. . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *United States v. Boos*, 127 F.3d 1207, 1211 (9th Cir. 1997), quoting *New York v. Ferber*, 458 U.S. 747, 759 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982).

> In *Ferber*, 458 U.S. 747 (1982), the Supreme Court noted:
> As one authority has explained: [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981).

*Ferber*, 458 U.S. at 758. *See also*, Schoettle, *Child Exploitation: A Study of Child Pornography*, 19 J.Am.Acad.Child Psychiatry 289, 292 (1980) 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the

---

months for possession and transportation upheld); *United States v. Coopman*, 602 F.3d 814 (7th Cir. 2010)(151 month guideline sentence reasonable for possession and receipt); *United States v. Maulding*, 627 F.3d 285 (7th Cir. 2010)(declining to apply reasoning of *Dorvee*); *United States v. Koch*, 625 F.3d 470 (8th Cir. 2010)(78 months for possession reasonable); *United States v. Bauer*, 626 F.3d 1004 (8th Cir. 2010)(guidelines sentence upheld for attempted receipt); *United States v. Regan,* 627 F.3d 1348 (10th Cir. 2010)(guidelines reasonable in receipt case);*United States v. Wayerski*, 624 F.3d 1342 (11th Cir. 2010); and *United States v. Alfaro-Moncada*, 607 F.3d 720 (11th Cir. 2010)(guideline sentence upheld).

most profound emotional repercussions"); *Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation*, 12 U.Mich.J. Law Reform 295, 301 (1979) (interview with child psychiatrist: "The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). *Id*. at 760.

Further, as this Court well knows, this defendant did not receive and possess child pornography in a vacuum. By logging onto the internet and seeking child pornography, the defendant not only exposed the victims in the images to additional harm, but also contributed to the demand for child pornography. As with any business, a demand causes the supply to increase. In the case of child pornography, receiving, possessing, and distributing child pornography directly contributes to the demand for more, increasing the sexual victimization of still more children. The Ninth Circuit has repeatedly recognized this connection, such as in *United States v. Blinkinsop,* 606 F.3d 1110 (9th Cir. 2010), stating,

> [M]erely possessing [or receiving] child pornography is not a victimless crime," because "**it fuels the demand for the creation and distribution of child pornography**," and evidence shows "the harm that children suffer when they are used in the creation of child pornography. . .when that pornography is distributed to others.

*Id.,* at 1118, fn 7 (citing *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008) (emphasis added)). *See also, United States v. Adams*, 343 F.3d 1024, 1032 (9th Cir. 2003); 136 Cong. Rec. at S4730 ("those who possess and view child pornography encourage its continual production and distribution").

The fact that the children suffer sexual abuse in the first place is a horrible reality. By viewing and sharing the digital record of these children's suffering, the defendant continued the exploitation for his own and others' gratification every time he viewed or exchanged these images. When these pictures are distributed over the internet, and when people such as the defendant seek them out and create a demand for them, the victims are left unable to heal, haunted by the images for

the rest of their lives. *United States v. Stevens*, 197 F.3d 1263, 1267 (9th Cir. 1999).

The harm of child pornography is even further exacerbated when one considers that this crime is one that is often used to facilitate new abuse and the production of new images. Courts and Congress have recognized that defendants often use child pornography to show to other children as part of the grooming process in getting the children to believe that having sex with adults is acceptable. *United States v. Maxwell*, 386 F.3d 1042, 1065 n. 22 (11th Cir. 2004) (quoting Congress' findings that child pornography is often used as part of method of seducing other children into sexual activity). Moreover, Courts and researchers have consistently recognized that people who have an interest in child pornography often molest children.

In Seto, Cantor, and Blanchard, "*Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia*" Journal of Abnormal Psychology, 2006, Vol. 115, No. 3, pp. 610–615, the authors found that collectors of child pornography were 2.8 times more likely to be pedophiles than other offenders against children. They wrote, "[o]ur results indicate that child pornography offending is a valid diagnostic indicator of pedophilia. . . . In fact, child pornography offenders, regardless of whether they had a history of sexual offenses against child victims, were more likely to show a pedophilic pattern of sexual arousal than were a combined group of offenders against children." *Id.* at 613. This research merely confirms the common-sense notion that someone who collects pictures and videos of children engaged in sexual activity is likely to be sexually aroused by such images.

### B. Child Pornography Offenders Often Are Child Sexual Abusers

The research goes beyond finding that people who collect the images of the sexual abuse of children are sexually aroused by them, however. One relatively recent study published in the Journal of Sexual Aggression provides yet more proof that those who collect child pornography pose a very real danger to children. In Bourke *et. al.* (2014): *"The use of tactical polygraph with sex offenders"* Journal of Sexual Aggression: An international, interdisciplinary forum for research, theory and practice, DOI:10.1080/13552600.2014.886729, the authors compiled the findings from three different federal agencies' use of tactical polygraphs with men under investigation for non-contact child pornography offenses. The polygraphs were administered to a total of 127 suspects on the day of, or within 5 days of, the execution of a search warrant for child pornography at their residences. None of the men had any known history of hands-on sexual abuse, and prior to the polygraph, only 4.7% (6 men) admitted to having committed a hands-on sexual offense against a child in the past. After a tactical polygraph, an additional 52.8% (67 additional men) of participants admitted to having committed sexual abuse of a child. All told, **57.5% of the 127 men admitted to already having sexually abused a child**, with 10 of the participants admitting to actively victimizing a child at the time.[2]

The conclusions in the recent Bourke study are very much in line with other research. In Seto, Hanson, & Babchishin, *"Contact Sexual Offending by Men with Online Sexual Offenses"* Sexual Abuse: A Journal of Research and Treatment 23(1), 124-145, December 2010, the authors conducted a meta-analysis of 24 studies of online sexual offenders. They found that, if the only indicator one relied upon was arrests or convictions, the number of these men who were involved in

---

[2] As a result of the admissions made during the post-polygraph interviews, a total of 282 victims were disclosed, and 97 victims who were still minors were identified by name.

contact offenses with children was low – generally less than 20%. However, when studies used polygraph testing, or some other means to insure honest, self-reporting (such as anonymity or immunity from prosecution as part of a treatment program), the numbers were radically different. The studies with these types of validation determined that **fifty-five percent** of the men whose only charged offense was the receipt and possession of child pornography admitted to contact offenses against children. The Seto study was based upon many studies, but its results have been confirmed by other independent studies as well. In Buschman, Wilcox, Krapohl, Oelrich, & Hackett, "*Cybersex Offender Risk Assessment. An Explorative Study*" Journal of Sexual Aggression, July 2010, Vol. 16, No.2, pp. 197-209, the study subjects were again limited to individuals whose only offense was possession of child pornography. As in the Seto research, fifty-five percent of the subjects in that study, when polygraphed, admitted to contact offenses with children.[3]

---

[3] Another published study suggests the rate of cross-over between child pornography offenders and hands-on offenders is even higher. "*The 'Butner Study' Redux: A Report on the Incidence of Hands on Child Victimization by Child Pornography Offenders*," Bourke and Hernandez, 24 J.Fam.Viol. 183-191 (2009). That study focused on 155 offenders enrolled in the Butner Sex Offender Treatment Program, all of whom had been convicted of possession, distribution, or receipt of child pornography. Of these 155, 115 had no documented acts of hands-on child sex abuse at the time of their sentencing. When the researchers sought to determine to what extent this reflected the real danger presented by these offenders, what they learned was alarming. After treatment, including polygraphs, 91 of those 115 (over 79%) who had no known history of hands-on victims ultimately admitted having engaged in hands-on sexual abuse of children. Thus, after treatment, 85% of the total sample of 155 men convicted of child pornography offenses revealed past hands-on behavior against children. The authors also concluded that for the vast majority of subjects in their sample, internet-based child pornography offense was an adjunctive behavior, that is, "their collecting and trading behaviors were simply behavioral manifestations of a larger, more pervasive, and enduring paraphilic lifestyle." *Id.,* at 188. While this study has been recently criticized as an "outlier" and subject to some questions regarding the motivations for the large number of self-disclosures, one of the authors addressed these concerns in detail via a submission to the U.S. Sentencing Commission. This can be found at: http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20120215-16/Testimony_15_Bourke.pdf.

Although the government has no specific information indicating that this defendant has sexually abused a child in person, the substantial number of those who exploit children both online and offline does and should raise legitimate concerns about child access, and certainly justifies stringent supervision like that recommended in the PSR. In addition, recidivism with both categories of offenders is difficult to assess due to a variety of factors, the primary one being that recidivism is defined as conviction or arrest, which represents a small fraction of crimes committed in an arena where secrecy and failure to report is the norm.

### C.  Recidivism is Difficult to Assess and Vastly Under-Estimated

Moreover, this Court should give very limited credit to any argument that online offenders have a low rate of recidivism. This is misleading since recidivism is defined in terms of subsequent arrests. Low levels of contact offenses based upon arrests should not be surprising. Unlike other offenders, child molesters do not boast about their crimes. In addition, victims of sex crimes are reluctant to report such crimes. Children are particularly reluctant to talk about sexual abuse. Bonta & Hanson, "*Gauging the Risk for Violence: Measurement, Impact and Strategies for Change*" (1994) (published by the Solicitor General Canada, Ministry Secretariat (Ottawa)); Hanson & Bussière, "*Predictors of Sexual Offender Recidivism*" (1996) (published by the Solicitor General Canada, Ministry Secretariat (Ottawa)). Thus, low recidivism numbers based upon arrests and convictions should be expected. However, when offenders are subject to a polygraph examination, or are assured that their admissions will not result in further prosecution, the number of admissions consistently jumps to more than half. As the Seventh Circuit's Judge Posner recently wrote in *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011), "We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children." *Id*. at 720 (citations omitted.) Those who collect images

of children subject to sexual abuse find sexual stimulation in those images. It should not come as a surprise to find that a large number of them have acted upon those impulses.

In another recent article, Ecke, Seto, and Williams, *Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study*, Law and Human Behavior (2011), 466-478, the authors observed that while recidivism rates (*i.e.,* rearrest rates) were low, they increased over time. Seto and Ecke's 2011 article was a follow up to their 2005 research on this question. While the original study followed offenders for an average period of 2.5 years, the new study extended that to 5.9 years. The continued monitoring of these defendants produced a disturbing trend that showed an increase in recidivism.

|  | Seto & Ecke (2.5 yrs)(2005) | Ecke, Seto, & Williams (5.9 yrs) (2011) |
|---|---|---|
| Any contact sexual offense | 4.5% | 6.0% |
| Any noncontact sexual offense | 6.5% | 11% |
| Any child pornography offense | 6.0% | 9.5% |

The above research is in line with other research indicating that the longer a sex offender is in the community, the greater the likelihood that he will be caught reoffending.[4]

### D.     Other Sentencing Factors

As the Congressional findings, studies, and case law above clearly establish, there are well grounded fears with respect to internet-based offenses relating to sexual abuse of children. Recognition of the seriousness of the offense,

---

[4] Because most studies relating to recidivism pertain to "hands-on" offenses, recidivism rates for re-offense by collecting or viewing child pornography are less of a known quantity. However, common sense dictates that re-offense is more likely to occur because it is easier to achieve in the privacy of one's home, simply by turning to a computer or one of many other devices with access to the Internet; such re-offense is also arguably harder to detect. Moreover, although "possession-only" offenses do not involve the challenge of obtaining a child, the children in the pictures are real indeed, and are continually violated by people who collect, trade, and use images of their sexual abuse for gratification.

the harm caused by the offense, and the need for deterrence all weigh in favor of lengthy sentences for child pornography offenders. As the Seventh Circuit recently noted:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).

As the Court is aware from victim impact letters submitted in cases like this one, victims of recorded sexual abuse have suffered lifelong, and continuing, trauma, and are re-victimized every time these videos are used or shared by men like the defendant. All suffered greatly when these horrific images and videos were created and will continue to suffer as long as people like the defendant view and distribute child pornography. The sentence of the Court should reflect the fact that the defendant caused tremendous suffering to these victims by participating in the continuation of their abuse, and he should be punished accordingly.

Also weighing in favor of a significant sentence is the need to avoid unwarranted sentencing disparity. As press releases from all over the country demonstrate, child pornography offenders typically receive significant sentences of incarceration in order to help send the message that child pornography offenses are serious and dangerous crimes.

## IV. CONCLUSION

For the reasons addressed in the PSR, this sentencing memorandum, and to be discussed at the sentencing hearing, the government asks the Court to accept the plea agreement and sentence the defendant to a term within the range contained within the plea agreement, to be followed by lifetime supervised release.

Respectfully submitted this 23rd day of November, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Carin C. Duryee*

CARIN C. DURYEE
Assistant U.S. Attorney

A copy of the foregoing served by electronic
or other means this 23rd day of November, 2022, to:

All ECF participants